**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

               Appellee,

        v.                                    16-CR-90-A
                                 **DECISION AND ORDER**

CARL RANDLE,

               Defendant-Appellant.
_____

       Appellant Carl Randle appeals from his misdemeanor conviction on one count of menacing in the second degree, in violation of the Assimilative Crimes Act, 18 U.S.C. § 13, and New York Penal Law § 120.14.[1] A jury convicted Appellant of brandishing a BB gun in the Department of Veterans Affairs (VA) Medical Center in Buffalo, New York.

       At his trial before Magistrate Judge Jeremiah J. McCarthy, Appellant sought to raise a claim of self defense.[2] Before trial, however, Judge McCarthy suggested that, without Appellant's testimony, there would be insufficient evidence to support a self-defense claim. Similarly, before opening statements, Judge McCarthy told defense counsel that, unless Appellant testified, counsel could not discuss the subjective component of a self-defense claim in his opening. And, at the end of trial, Judge McCarthy concluded that the evidence did not support a self-defense charge. Appellant challenges these rulings on appeal.

       For the reasons stated below, the judgment is affirmed.

---

[1] The Assimilative Crimes Act "assimilates into federal law, and thereby makes applicable" within the territorial jurisdiction of the United States "certain criminal laws of the State in which the [federal territory in question] is located." *Lewis v. United States*, 523 U.S. 155, 158 (1998).

[2] Appellant consented to trial and sentencing before a magistrate judge. *See* Docket No. 13.

## BACKGROUND

**A. Factual history**

Because a jury found Appellant guilty, the Court "views the evidence in the light most favorable to the [G]overnment." *United States v. Facen*, 812 F.3d 280, 283 (2d Cir. 2016) (quotation marks omitted).

On the morning of May 16, 2016, Lakita Hughes bought a cup of coffee at a coffee shop in the VA Medical Center in Buffalo.[3] As Hughes stood at the counter mixing cream and sugar into her coffee, Appellant approached Hughes and began "hitting on" her. A-129. Appellant "never stopped" talking to Hughes, even though she "asked him repeatedly to leave [her] alone" (A-117)—Hughes was "having a bad morning" and "didn't really want to be engaged in any kind of conversation." A-115. She therefore "asked [Appellant] twice directly" to "leave [her] alone" and "then . . . asked him to direct his attention to someone else." A-117. Appellant walked several feet away from Hughes to get in line at the coffee shop.

Appellant then "said offensive things" to Hughes. A-134. Hughes began arguing with Appellant, "reiterat[ing] that [she] didn't want to be messed with that morning." A-134. Hughes approached Appellant and began waving her hand, at one point putting it in front of Appellant's face. Appellant later told the investigating agent that, when Hughes was in front of him, she told him to "shut the fuck up." A-178. Another witness testified that Hughes "went ballistic" and was "waving and pointing her finger in [the Appellant's face]." A-146. Hughes, however, never verbally threatened Appellant. A-150. *See also* A-142.

---

[3] The Court's summary of the evidence is based primarily on Hughes's testimony, as well as a silent surveillance video of the incident. *See* Gov't Ex. 1.

2

Hughes returned to the counter, but she quickly turned back towards Appellant. Hughes did so because Appellant had "made some threat." A-118. Appellant then pulled a BB gun from his pocket and showed it to Hughes. Hughes approached Appellant so that, "if necessary," she would "have more of an opportunity to . . . wrestle the gun and redirect it." A-118. In order to "call[] his bluff," Hughes told Appellant "something along the lines of fuck your fake ass gun." A-119. Hughes, however, "was afraid of the gun"—which she "thought . . . was real"—and did not "know whether [Appellant] intended to shoot [her]." A-135. Appellant then walked away from the coffee shop and left the gun in the hospital's chapel. A-155-156.

Appellant later told the investigating agent that he had brandished the BB gun because Hughes was "a grown ass woman and he did not know if she had a knife or weapon," and that he was "just trying to scare her." A-178.

### B. Procedural history

Appellant was charged with second-degree menacing, in violation of the Assimilative Crimes Act, 18 U.S.C. § 13, and New York Penal Law § 120.14(1). A person is guilty of menacing in the second degree when "[h]e . . . intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14(1).

Appellant anticipated that, at trial, he would argue that he brandished his BB gun in self defense. A self-defense claim "involves both subjective and objective elements." *United States v. Davis*, 531 F. App'x 65, 68 (2d Cir. 2013). To find that a person acted in self defense, "[t]he fact-finder must determine that the defendant believed . . . physical

3

force was necessary and that a reasonable person would have believed the use of . . . physical force was necessary under the same circumstances." *Jackson v. Edwards*, 404 F.3d 612, 623 (2d Cir. 2005) (citing *In re Y.K.*, 87 N.Y.2d 430, 433-34 (1996) and *People v. Goetz*, 68 N.Y.2d 96, 114-15 (1986)) (addressing use of deadly physical force). *See also* N.Y. Penal Law § 35.15(1) (imposing similar requirements); *United States v. Taveras*, 570 F. Supp. 2d 481, 493-94 (E.D.N.Y. 2008) (relying, in part, on Penal Law § 35.15 to define self defense in federal prosecution).[4] Moreover, a person "may only use such force as is reasonably necessary to defend himself . . . against the imminent use of unlawful force." L. Sand, et al., *Modern Federal Jury Instructions: Criminal*, ¶ 8.08, Instruction 8-8 (2016).[5]

When Appellant's self-defense claim was raised at the final pre-trial conference, Judge McCarthy noted that, "unless there are any other witnesses," he "assume[d] that [Appellant] would have to testify." A-47. Defense counsel responded that "we have the film plus witnesses." A-48. Judge McCarthy reserved decision, concluding that he wanted to "see the video" before ruling. *Id.* The next day, Judge McCarthy informed the

---

[4] Appellant proposed a self-defense instruction adapted from *New York Criminal Jury Instructions*. Docket No. 28. The Second Circuit has recognized, however, that "the law pertaining to self-defense is a matter of federal common law" and that it is "appropriate to look to state court decisions for guidance" on self defense when a court is faced with a "novel question." *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008). *Cf. Dixon v. United States*, 548 U.S. 1, 13, 16 (2006) (looking to the common law to conclude that the defendant "bear[s] the burden of proving the defense of duress by a preponderance of the evidence.") Although this is an Assimilative Crime Acts prosecution, Appellant has not provided authority (nor has the Court found any) for the proposition that New York law on affirmative defenses is assimilated into federal law in the same way that the substantive crime of menacing is. Thus, to the extent the Court looks to state law in this Decision and Order, it is only as a guide to help define the common law of self defense.

[5] In addition to these well-settled principles, self-defense is generally unavailable to the "initial aggressor." *See id.* ("The law recognizes the right of a person who is not the aggressor to stand his ground and defend himself or another.); N.Y. Penal Law § 35.15(1)(b) (providing exception to self-defense rule where "[t]he actor was the initial aggressor"); *United States v. Thomas*, 34 F.3d 44, 48 (2d Cir. 1994) ("It has long been accepted that one cannot support a claim of self-defense by a self-generated necessity to kill.") (citations omitted). Because the Court concludes that Appellant failed to introduce evidence supporting a self-defense charge, the Court need not address the initial-aggressor exception.

parties that defense counsel could not "address [the] subjective component of self-defense in [his] opening unless he will call [Appellant] as a witness." A-61.

On the morning of jury selection, Judge McCarthy "reiterate[d] [his] pretrial rulings," including his ruling on self-defense: Judge McCarthy told defense counsel that, "[i]n your opening, you may address the subjective component of the self-defense issue if you intend to call [Appellant] as a witness. If you do not, then you may not mention that." A-87. In his opening, defense counsel did not address Appellant's subjective belief as to whether Hughes was armed; rather, he argued that she "was the aggressor. You'll see it and [Appellant] was trying to defend himself." A-102.

After the first day of trial, Judge McCarthy observed that, during the case agent's cross examination (which had covered, among other things, his interview of Appellant), the agent "did not testify that [Appellant] told him that he feared that Ms. Hughes had a weapon as she approached him—he testified that [Appellant] stated 'he did not know if she had a knife or weapon' . . . . While [Appellant] might have believed that <u>some</u> measures were necessary to protect himself as [Hughes] approached him, in order to brandish a weapon he would have to have believed that she herself had a weapon, and he stated that he did not know that." A-81 (emphasis in original). Moreover, Judge McCarthy observed, the video of the incident "shows Ms. Hughes approaching [Appellant]—even perhaps in an aggressive manner, which might justify him in taking some measures to protect himself, such as, for example, pushing her away. But given the size differential between them, his brandishing a weapon could be considered reasonably necessary to protect himself only if he believed she had a weapon—and as previously stated, the only evidence in the record at this point is that he did not know

5

whether she did." A-81. Judge McCarthy concluded that, "unless [Appellant] takes the stand, at this point I am leaning toward precluding the justification defense." A-81.

Finally, at the charge conference, Judge McCarthy renewed his observation that, "unless [Appellant] takes the stand and offers his own testimony, we're not there in terms of that [self-defense] defense being available." A-201. At the end of the charge conference, and after taking a recess, Judge McCarthy told the parties that "I've turned it over in my mind quite a few times between yesterday and today. I am not—based on the state of the evidence thus far, I do not think that there is sufficient evidence in the record thus far to put the justification defense before the jury for their consideration. I want to make clear that I am not basing this decision on the fact that [Appellant] has not testified. He has the right to remain silent and I'm not in any sense penalizing him for that. All I'm saying is that without his testimony, I don't find enough evidence elsewhere in the record to justify placing the defense before the jury." A-210.

The jury convicted Appellant, and Judge McCarthy sentenced him to six months' imprisonment and six months' supervised released.[6] This appeal followed.

## DISCUSSION[7]

On appeal, Appellant first argues that Judge McCarthy erred by suggesting that he would give the jury a self-defense charge only if Appellant chose to testify. This, Appellant

---

[6] Appellant has completed his terms of imprisonment and supervised release. However, because Appellant challenges his conviction, rather than his sentence, this case is not moot. *See United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) ("The Supreme Court has long held that a challenge to a criminal conviction itself presents a justiciable case or controversy even after the expiration of the sentence that was imposed as a result of the conviction.") (citing *Spencer v. Kemna*, 523 U.S. 1 (1998)).

[7] On an appeal to a district court from a misdemeanor conviction before a magistrate judge, "[t]he Appellant is not entitled to a trial de novo." Fed. R. Crim. P. 58(g)(2)(D). Instead, "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.*

6

argues, violates the holding of *Brooks v. Tennessee*, 406 U.S. 605 (1972).  Appellant next argues that Judge McCarthy erred in concluding that the evidence was insufficient to support a self-defense charge.

## 1. Appellant's *Brooks* claim

### A. Appellant's argument and the standard of review

Appellant's first argument is that Judge McCarthy violated the holding of *Brooks v. Tennessee*, 406 U.S. 605 (1972), by suggesting that Appellant's testimony was a necessary condition for a self-defense charge.  *Brooks* considered a Tennessee statute which required that a criminal defendant "desiring to testify . . . do so before any other testimony for the defense is heard by the court trying the case."  *Id.* at 606 (quoting Tenn. Code. Ann. § 40-2403 (1955)).  *Brooks* held that the statute violated the Fifth Amendment's Self Incrimination Clause because it "cast[] a heavy burden on a defendant's otherwise unconditional right not to take the stand."  *Id.* at 610-11.  The Court also held that the statute violated the Fourteenth Amendment's Due Process Clause because "the statute restricts the defense—particularly counsel—in the planning of its case" and "thereby deprived" the defendant "of the guiding hand of counsel in the timing of this critical element of his defense."  *Id.* at 612-13 (quotation marks omitted).

The Government responds—and, for the reasons stated below, the Court agrees—that Judge McCarthy did not condition a self-defense charge on Appellant testifying.  Instead, Judge McCarthy simply imposed a reasonable limit on defense counsel's opening statement.  The Court reviews issues concerning "the making and timing of opening statements" for abuse of discretion.  *United States v. Salovitz*, 701 F.2d 17, 21 (2d Cir. 1983).

## B. Judge McCarthy's limit on defense counsel's opening statement

Appellant's *Brooks* argument relies on the premise that Judge McCarthy conditioned any self-defense charge on Appellant testifying. The record does not support this claim.

Judge McCarthy's final ruling (A-209-10) was simple: If Appellant chose to testify, he would have introduced sufficient evidence to be entitled to a self-defense charge. Without Appellant's testimony, however, and in the absence of any other evidence concerning Appellant's state of mind, there was not enough evidence in the record to support a self-defense charge.

Judge McCarthy's pre-charge comments and rulings, read in context, demonstrate that he conveyed this intent to the parties from the outset. Judge McCarthy's first comment on the issue came at the final pre-trial conference. After the Government argued that Appellant would "have to take the stand and testify" "[i]n order to establish" the subjective component of a self-defense claim, Judge McCarthy responded: "Well, *unless there are any other witnesses*. I assume that [Appellant] would have to testify." A-47 (emphasis added). This comment did not suggest that Judge McCarthy was considering conditioning a self-defense charge on Appellant's decision to testify. Judge McCarthy instead observed that, unless other witnesses were able to provide insight into Appellant's state of mind, the record lacked evidence of Appellant's belief, and Judge McCarthy therefore assumed that Appellant's testimony would be necessary to meet his burden of establishing a self-defense claim. Indeed, when, shortly thereafter, the Government renewed its argument that defense counsel should not be permitted to refer to the subjective component of self defense "unless [Appellant] is going to take the stand,"

8

Judge McCarthy demurred, concluding that he wanted "to see the video." A-48. This interaction cannot be understood as Judge McCarthy imposing a condition that Appellant testify in order to receive a self-defense charge.

Defense counsel's response shows that he understood Judge McCarthy to be commenting on the lack of evidence concerning self defense. After Judge McCarthy noted that, "unless there are any other witnesses[,] I assume that [Appellant] would have to testify," defense counsel responded, "Judge, we have the film plus witnesses." A-47. In other words, defense counsel attempted to refute Judge McCarthy's belief that there was not enough evidence to justify a self-defense charge. Had defense counsel understood Judge McCarthy to be imposing a requirement that Appellant testify in order to receive a self-defense charge, counsel surely would have replied differently. *See also* A-182 (Defense counsel during argument on self-defense charge: "I don't know any law that says that the Defendant has to take the stand in order to establish a self-defense in order to get the charge. I understand why the court limited me in opening, I get that.")

Judge McCarthy's September 19, 2016 tentative ruling (A-81) likewise shows that his decision was grounded in the fact that, without Appellant's testimony, there was not enough evidence in the record to support a self-defense claim. In his tentative ruling, Judge McCarthy analyzed the two pieces of evidence on which Appellant relied in his request for a self-defense charge: the video of the incident, and Appellant's statement to the investigating agent. After analyzing each piece of evidence, and after explaining why, in his view, that evidence did not support a self-defense charge, Judge McCarthy concluded: "Therefore, unless [Appellant] takes the stand, at this point I am leaning toward precluding the justification defense." A-81. Judge McCarthy's analysis of the

9

evidence arguably supporting a self-defense claim shows, again, that his decision was based on the lack of evidence—from whatever source—supporting a self-defense claim. It was not based on Appellant's decision not to testify.

And, finally, when Judge McCarthy gave his final ruling on Appellant's request for a self-defense charge, he concluded that, "based on the state of the evidence thus far, I do not think that there is sufficient evidence in the record . . . to put the justification defense before the jury . . . . I want to make clear that I am not basing this decision on the fact that [Appellant] has not testified. He has the right to remain silent and I'm not in any sense penalizing him for that. All I'm saying is that without his testimony, I don't find enough evidence elsewhere in the record to justify placing the defense before the jury." A-210. As with his prior comments, Judge McCarthy's final ruling emphasized that his decision was based on a lack of evidence from *any* source—not on Appellant's decision whether to testify.

To be sure, when he "*reiterate[d]* [his] pretrial rulings," Judge McCarthy did not state that his decision was based on a lack of evidence. He instead told defense counsel that, "[i]n your opening, you may address the subjective component of the self-defense issue if you intend to call [Appellant] as a witness. If you do not, then you may not mention that." A-87 (emphasis added). *See also* A-61 (similar ruling). It perhaps "would have been preferable for the court to define the purpose of an opening statement as to 'state what evidence will be presented,' without reference to" Appellant's decision to testify. *Ramirez v. Artuz*, No. CV-97-7396(RR), 1999 WL 754354, at *9 (E.D.N.Y. Aug. 2, 1999) (Raggi, D.J.) (quoting *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring)) (denying habeas claim based, in part, on court's instruction to defense

10

counsel, in front of jury, that "[t]he purpose of an opening statement is to tell the jury what you expect to prove"). But when these comments are read in light of the rest of the record—including, importantly, Judge McCarthy's first comment on the issue, together with counsel's response, *see* A-47—they do not support the premise of Appellant's *Brooks* argument. That is, the record does not show that Judge McCarthy ruled that Appellant's testimony was a necessary condition for a self-defense charge.[8]

Properly understood, the ruling that Appellant primarily challenges—"In your opening, you may address the subjective component of the self-defense issue if you intend to call the [Appellant] as a witness" (A-87)[9]—was a limit on defense counsel's ability to discuss facts in his opening statement that he did not anticipate eliciting or introducing during trial. "[A] trial judge" has "plenary control of the conduct of counsel particularly in relation to addressing the jury." *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). This includes the authority to keep an opening statement within its "narrow purpose and scope" by, among other things, precluding counsel from making "statements which will not or cannot be supported by proof." *Id. See also Petrucelli v. Smith*, 544 F. Supp. 627, 636 (W.D.N.Y. 1982) (observing that "prosecutors and defense attorneys alike are allowed some latitude in interpreting the available evidence in their opening statements and summations," but noting that, "[a]t a minimum, . . . the lawyers' versions of what occurred must coincide with and be circumscribed by the allowable evidence, as well as the applicable law").

---

[8] The Court offers no opinion on whether such a ruling would have been proper under *Brooks*.

[9] Appellant primarily challenges this ruling, rather than Judge McCarthy's final ruling. *See* Def. Br. at 9.

11

Judge McCarthy acted well within his discretion in limiting defense counsel's opening to only those topics counsel intended to elicit through either cross-examination or in any defense case. Judge McCarthy's decision was based on his understanding of the anticipated proof (or lack of proof) at an early stage of trial, when the facts had not been entirely developed. A trial judge must often make decisions before all the facts relevant to his decision are known; Judge McCarthy cannot be faulted for taking a cautious approach and precluding counsel from telling the jury about facts that, at the time, Judge McCarthy had no reason to think counsel would introduce. *See Dinitz*, 424 U.S. at 612 (Burger, C.J., concurring) (noting that it is "fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof").

Appellant argues that Judge McCarthy "did not exercise *any* discretion in making [his] ruling" and, instead, adopted a "sweeping and unconditional order." Def. Rep. at 3. But, as discussed earlier, this interpretation of Judge McCarthy's statements is unsupported by a careful review of the record. Judge McCarthy did not lay down the blanket ruling Appellant says he did: Judge McCarthy instead announced a rule for counsel's opening statement based on the lack of evidence—from Appellant or anyone else—as to Appellant's state of mind. This was a reasonable and prudent exercise of discretion.

### 2. Appellant's request for a self-defense charge

#### A. Standard of review

The Court "review[s] *de novo* the [magistrate] court's decision that the evidence is insufficient to warrant the presentation of a justification defense." *United States v. Kopp*,

12

562 F.3d 141, 145 (2d Cir. 2009). *See also United States v. Hodge*, 103 F. App'x 686, 686 (2d Cir. 2004) ("The applicable standard of review is *de novo* because the district court held that, as a matter of law, the evidence submitted by [Appellant] was insufficient to warrant the presentation of a justification defense.")[10]

### B. Appellant's request for a self-defense charge

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). When that defense is self defense, the Second Circuit has suggested (and the New York Court of Appeals has held) that, in deciding whether a jury charge is appropriate, the evidence must be viewed in the light most favorable to the defendant. *See Jackson v. Edwards*, 404 F.3d 612, 624 (2d Cir. 2005); *People v. Butts*, 72 N.Y. 2d 746, 750 (N.Y. 1988) ("When determining whether to give a charge on a claimed defense, the trial court must view the evidence in the light most favorable to the Appellant.") *Cf.* L. Sand, et al., *Modern Federal Jury Instructions: Criminal* ¶ 8-68, Instruction 8-9, cmt. (2016) (with regard to use of deadly physical force in self defense, noting that, "no matter how weak the proof may be, if there is some evidence that the defendant was acting in self-defense, a charge on that issue should be given.") Indeed, a justification charge is warranted even where "an aspect of the defendant's testimony is inconsistent with the defense." *People v. Padgett*, 456 N.E. 2d 795, 796-98 (N.Y. 1983). Put differently, "[a] trial court need not charge a jury with

---

[10] The Government argues that the Court should review Judge McCarthy's decision to not give a justification charge for abuse of discretion. Gov't Br. at 8-9. The cases the Government cites for that proposition, however, do not involve self defense. *See United States v. Rowland*, 826 F.3d 100, 115-16 (2d Cir. 2016) (challenge to manner in which jury charge characterized defendant's defense); *United States v. Hurtado*, 47 F.3d 577, 584 (2d Cir. 1995) (entrapment defense); *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994) (missing witness charge); *United States v. Pilarinos*, 864 F.2d 253 (2d Cir. 1988) (entrapment defense).

13

respect to an accused's defense of justification if *no view of the evidence* establishes the basic elements of the defense." *People v. Watts*, 442 N.E. 2d 1188, 1189 (N.Y. 1982) (emphasis added). This rule has long been "well-settled." *Padgett*, 456 N.E. 2d at 797.

Appellant claims that two pieces of evidence required a jury charge on self defense. First, Appellant argues that "the video [of the incident] speaks for itself" because it "shows that Ms. Hughes was upset and angry at [Appellant]," and it shows that "she was the aggressor who twice confronted and approached [Appellant] as he waited in line . . . . eventually telling [Appellant] to 'shut the fuck up.'" Def. Br. at 13. Second, Appellant points to his statement to the investigating agent (which was introduced during the agent's cross-examination) as evidence of his subjective fear of Hughes. Specifically, during the agent's cross-examination, the following exchange occurred:

> Q: I don't recall you telling us in your direct so I'm just trying to get it all down. You asked [Appellant] why he needed the pistol and he said she's a grown ass woman and he did not know if she had a knife or weapon; do you remember him telling you that?
>
> A: Yes.
>
> Q: And then he said he was just trying to scare her?
>
> A: Yes.

A-178. [11]

---

[11] Because no party has raised the issue, the Court assumes for purposes of this opinion that this statement was properly admitted. The statement, however, appears to be inadmissible hearsay. Of course, a party's statements are excluded from the definition of hearsay if they are offered by "an opposing party." Fed. R. Evid. 801(d)(2)(A). Here, however, Appellant attempted to introduce his *own* statement through cross-examination. Moreover, the only hearsay exception that might be relevant does not appear to apply. *See* Fed. R. Evid. 803(3) (excepting from the hearsay rule "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . ., but *not including a statement of memory or belief to prove the fact remembered or believed* unless it relates to the validity or terms of the declarant's will"). The Court offers no opinion on whether the rule of completeness required Appellant to be allowed to introduce his own statements. *See, e.g.*, *Kopp*, 562 F.3d at 144.

14

The Court views this evidence in the light most favorable to Appellant.

The video does not, as Appellant argues, demonstrate that it was objectively reasonable for him to use a gun to defend himself from Hughes. Even when viewed in the light most favorable to Appellant, the video shows—at most—that Hughes was about to slap, punch, or shove Appellant. This might justify Appellant in shoving Hughes away from him, but it does not justify threatening her with a gun. *See People v. Perry*, 967 N.E. 2d 1195, 1197 (N.Y. 2012) ("Frightening a[nother person] with a gun is not a justified 'emergency measure' for ending a tussle or a fistfight.") Indeed, as Judge McCarthy observed, the "size differential" between Appellant and Hughes undercuts any argument that Appellant reasonably believed that Hughes might attack and kill him. A-81. And the fact that Hughes walked away from Appellant after first confronting him makes it even more unreasonable to think that a gun was necessary to deter whatever further threat Hughes might have posed. Thus, even when viewed in the light most favorable to Appellant, the video does not show that it was "reasonably necessary" for Appellant to use a gun to defend himself against whatever "imminent use of unlawful force" Hughes might have posed. L. Sand, et al., *Modern Federal Jury Instructions: Criminal*, ¶ 8.08, Instruction 8-8 (2016).

Thus, nothing in the record shows that it was objectively reasonable for Appellant to believe that he needed a gun to protect himself from Hughes. In other words, "[e]ven if [Appellant] had actually believed that he had been threatened with the imminent use of deadly physical force, . . . his reactions were not those of a reasonable man acting in self defense." *People v. Collice*, 863 N.E.2d 340 (N.Y. 1977) (cited with approval in *Goetz*, 68 N.Y.2d at 113). Statutes codifying the common law of self defense have "uniformly

15

required that" a person's belief "as to the intention of another person to inflict serious injury . . . comport with an objective notion of reasonableness." *Goetz*, 68 N.Y.2d at 107 (addressing deadly physical force). There must, therefore, be at least *some* evidence of *both* the subjective and objective elements of a self-defense claim in order to entitle a defendant to a self-defense charge. *See Watts*, 442 N.E. 2d at 1189 ("A trial court need not charge a jury with respect to an accused's defense of justification if no view of the evidence establishes the basic elements of the defense.") At most, the record contains evidence of the subjective component of Appellant's self-defense claim.[12] It does not contain evidence showing that Appellant's response to Hughes was objectively reasonable.

Thus, upon *de novo* review, the Court affirms Judge McCarthy's decision to not give the jury a charge on self defense.

## CONCLUSION

For the reasons stated above, the judgment is affirmed.

**SO ORDERED.**

Dated: December 13, 2017   \_\_*s/Richard J. Arcara*_____
Buffalo, New York   HONORABLE RICHARD J. ARCARA
   UNITED STATES DISTRICT JUDGE

---

[12] Menacing might be justified by a "belie[f] that [the other person] had a weapon." *Perry*, 967 N.E. 2d at 1197. *See id.* ("[Menacing] would be justified in defense of one's own life," provided that there is evidence that the person "was afraid, during the[] encounter, that [the other person] would kill him.") To support his self-defense claim, Appellant relies on his statement to the investigating agent that he brandished the BB gun because Hughes is, in Appellant's words, "a grown ass woman and he did not know if she had a knife or weapon." A-84. A literal reading of this statement would not support the subjective component of a self-defense claim: Appellant "not know[ing]" whether Hughes had a weapon is, of course, different than his believing that she did have a weapon. However, when this statement is viewed in the light most favorable to Appellant, it provides at least some support for the subjective component of a self-defense claim. The statement does not expressly state that Appellant thought Hughes had a weapon. But Appellant's failure to clearly articulate his claimed fear should not preclude him from raising a self-defense claim, assuming that his fear was objectively reasonable. *See People v. McManus*, 496 N.E. 2d 202, 206 (N.Y. 1986) (emphasis added) (noting that a defendant "is entitled to a [justification] charge . . . whenever the defendant *claims* that he engaged in forceful conduct in avoidance of a perceived attack") (emphasis added).

16